Will her argument next in number 21-1502, Buffalo Xerographix v. Sentinel Insurance Company. Mr. Bruloff, whenever you are ready. Good morning, your honors. May it please the court. My name is Chris Bruloff and I represent the appellant's policyholders in this matter. Unless the court has a specific preference, the first thing I'd like to address is the elephant in the room, which is why this court's summary order in Kim Chi should not be applied on this particular case under this policy with this insurance company. And the reason for that is twofold. The first one is that this particular case has the virus limitation. And the virus limitation is different from the previous analysis with exclusively determining whether a virus exclusion or the absence thereof should be analyzed. I don't understand how your argument is how the virus caused property damage. How did that happen? Well, your honor, it's a matter of contaminants have long been held to constitute either loss of, physical loss of, or damage to property. And in the Kim Chi matter, the court even recognized that other contaminants are in fact covered under this policy. I don't gain to there may be possible asbestos and so forth and so on. But how did COVID, which caused a lockdown in the community, cause property damage to your client's property? Because it fundamentally altered the use and occupancy of the actual property itself, as well as the personal or business property as well. That's the whole point of having contaminants at the property. That constitutes direct physical loss or direct physical damage. What was the property damage? I'm sorry? Property damage. That's the hurdle I can't quite get over. So help me if you will. Well, Judge, the cases throughout New York as well as across the country have indicated that when property, whether it's physical property, real estate, or whether it is business personal property, when that cannot serve the function for which it is insured, that constitutes direct physical loss of or direct physical damage to that property. So this is not necessarily. But you rejected that proposition in 10,012 holdings, right? Your Honor, I disagree that that was rejected in 10,012 holdings. The 10,012 holdings decision was largely dependent on examining Roundabout. And Roundabout examined a situation where there was no direct nexus between the property and the allegations. That was exclusively civil authority orders, which is not at issue here. So at issue here, there is nexus. You're saying regardless of the orders from the governor that denied you access to the thing, it still was a direct physical loss because the virus was present, so you couldn't walk in. That is correct, Your Honor. But we did say in 10,012 holdings that direct physical loss or damage involves actually the property is physically gone, like somebody steals it, which doesn't happen in terms of real property. Or there's some actual physical damage to it, not just that you lose the use of it. So the presence of the virus, even if we say the virus is on surfaces as opposed to it being with other people, or let's assume the virus is present on surfaces and so therefore you don't go inside, isn't that what we describe in 10,012 holdings as loss of use of the property as opposed to direct physical loss of the property? Your Honor, I would disagree because, again, it's not direct physical – or it's not loss of use exclusive of any covered loss that occurred at the property. That's what happened in 10,012 holdings as well as in Roundabout was that there was no direct physical loss at the property itself. There was no cause. There was no event that happened at the property. That's why in that case loss of use exclusively – The difference between this case and prior cases is that you just alleged that the virus was in your property. The other cases said, well, the governor told us we couldn't go to our property, and so that's the loss. In some of those cases, the reason that I – The outcome would have been completely different if they had just put in their complaint. In 10,012 holdings of the other cases, in addition to the governor doing a lockdown order, there was a virus present in our property. Your Honor, I don't want to say that and mislead the court because I was counsel in Kim Chi, and we did have these same allegations in Kim Chi, which is why I started this argument by trying to distinguish the Kim Chi summary order as opposed to this particular case. So I can't say that just because of the existence of those allegations, the analysis would be entirely different. But that's the only distinction between your case, this case, and prior cases. I disagree. I'm sorry. So what was the other distinction? The other distinction is the fact that in those cases, there wasn't a proper analysis done of the actual meaning of direct physical loss and direct physical damage. Yeah, so I kind of get this point. You do have the virus exclusions, and the language of the virus exclusions does imply that there is such a thing as a direct physical loss caused by a virus. Your Honor, if I may, this case, the reason that this is different is this doesn't just deal with the virus exclusion. This deals with a virus limitation that doesn't just imply that there's direct physical loss and direct physical damage by a virus. Why don't you look it up, but since you have it there, why don't you tell me what it says? Yes, so I am referring you directly to Appendix 625 to 626, which is the limited fungi, bacteria, or virus coverage. Loss or damage by a virus, as used in this limited coverage, the term loss or damage means direct physical loss or direct physical damage to covered property caused by a virus. That's correct, Your Honor. Right, so that does envision the possibility that there's such a thing as a direct physical loss or direct physical damage caused by a virus. Correct. But that doesn't change our holding in the prior cases that says we think direct physical loss or damage is actual physical damage to the property, and merely having a virus on your property is not that. Your Honor, it doesn't change those holdings, but I would urge the court to reexamine the decision. Maybe if this language was in those cases, maybe the panels would have reached a different conclusion about direct physical loss or direct physical damage. But are we at, I mean, don't those holdings reach the language that you have in this case? Well, no, I disagree. But does direct physical loss mean something different in your insurance contract than it did in the insurance contract in 10,012 holdings? Yes, Your Honor. So you're saying we should interpret the same phrase as having a different meaning? Yes, Your Honor, and that's because it is included in policy forms used by this insurance carrier, which are necessarily examined. Even though we determined previously that New York law says that direct physical loss or damage is actual physical harm to the property, we should say that the state courts would make a different conclusion when it's an insurer that has a virus exclusion limitation in some of their contracts. Your Honor, yes, but I would alter that question of yours just briefly in the sense that the court did not make a determination that the language direct physical loss of or direct physical damage to requires physical damage. It said in those policies, it requires it. Because under those policies, there wasn't the virus limitation, which created an ambiguity as to that insuring clause. That's the difference in this particular case. So there isn't the virus limitation either, right? It's just that this insurer uses the virus limitation in other policies. Correct. They didn't use it here, and so therefore we should infer. Well, that's correct. Under the case law set forth by the Court of Appeals and examined by this court, specifically Quadrant Structured International… Actually, the insurance contract in this case looks like the one in 10,012 holdings. But you're saying because the insurer who drafted it has other insurance contracts that has a virus exclusion limitation, we should understand them to mean direct physical loss as meaning something different. Yes, that's exactly right because the rule in the Second Circuit and in New York is that when you examine ambiguity, you have to look not just at this contract but similar contracts to determine the intent behind the provision. And that's why in this particular context where the insurer, where Hartford and its affiliates have affirmatively issued coverage forms, unlike some carriers that acknowledge that the term direct physical loss or direct physical damage can apply and in fact does apply to viruses, under this analysis, that's why this court should not just unilaterally hold that under all circumstances, under all policies, direct physical loss or direct physical damage requires physical alteration. And I'd even go so far as to say that pursuant to existing case law that we've argued, physical alteration is not required under precedent case law. Physical alteration is just one component, one method of direct physical loss or direct physical damage. And I'd emphasize too, Your Honors, that in... I'm sorry, I guess I missed your point. So I guess it sounds like you were about to say it. So what's the distinction between this and the Kim Chi case? So in Kim Chi, there was an express acknowledgment that there was a delineation between the virus, COVID, and then there's a delineation between contaminants that persistently contaminate property. And that is an improper factual determination at this stage. And there's a very important provision in policies that render that. It's not an issue of whether it's covered. It's a question of the extent of damage, which is policies oftentimes with time element circumstances provide deductibles. You don't get paid if the covered loss doesn't last for X amount of time or cause X amount of damages. That's not in this case. And so, and even if it were, that would just be a determination of, okay, does the deductible render this moot to the point where this particular insured cannot recover because the policy terms don't allow them to recover under these terms? That's not the case here. So persistent contamination, the duration of which the virus lasts, is not a question of whether it's covered in the first instance. It's instead a question of how much damage, specifically how much property damage, was suffered by the insured. And then subsequently- Can I just ask this question? So what is the property damage that's caused by the virus? Well, again, this goes back to when I was answering the question. The property damage is that the property, the utensils of the- Have a virus on them. Have the virus on them. Once you wipe the surfaces, they're back to normal, right? Well, Your Honor, that would be science- The property damage is gone, right? Assuming that's correct, yes. But assuming that's correct, that doesn't make that an uncovered loss because the same is true for smoke. The same is true for mold, all of which are recognized covered losses under these insuring clauses. So the fact that it can merely be cleaned, some courts admittedly have held that that renders this- Not necessarily. So it's a covered loss even if it's a little bit of mold on a table that you could wipe off with a cloth? Yes. But the question would be, does the deductible prevent the insured from practically making a claim? Have they sustained damages that they can make a claim? That's why we have deductibles. So it's the same issue here. The one thing that I urge the Court not to forget is we're talking about a situation when this case, when the virus was present at the property, disinfectants, cleaning supplies, not only did we not know whether they were effective, we couldn't get them. So the persistence of the contaminant at the property, that invokes- I mean, it can't be that a misunderstanding about the nature of the contaminant changes the coverage, can it? No, I don't necessarily state that that's the case. But in terms of obtaining disinfectants, in terms of being able to remedy, to repair the property, that is a reasonableness analysis that's a factual determination. Once it is a covered loss, you would get coverage for maybe the remediation. But the question about whether it is to begin with is a separate question. Agreed. But my point is that in Kim Chi, the Court actually commingled the two by analyzing it in terms of- It's interesting the point you make about smoke and mold. So if it was just dirt or dust, but it was covering all the surfaces, would that still be physical loss because you couldn't use the premises and the utensils until it was cleaned? Well, coincidentally, Your Honor, dust has been held to be a covered cause of loss under various cases, particularly during the 9-11 cases. That was, in fact, a covered cause of loss that was deemed covered under the policy. So the answer would be yes. The other example that I've been using, Your Honor, is we all recognize that water is, in fact, a covered cause of loss. If you have a garage that has concrete floors and they suffer a flood, presuming that it's covered under the policy and not excluded, if the water dries and there's no physical damage, did a covered cause of loss occur? Unquestionably, yes. Just because the property damage may be zero or minimal does not eliminate the fact that the subsequent shutdown is still covered because a covered event occurred. So the question of persistence of the contamination is not the vital issue, and that's why the summary order in Kim Chi should not be applied here. Does it matter whether the loss of use is because there's virus present on the surfaces or because people are worried about gathering together in a building because they'll get the virus from another person? Your Honor, I would say that if— So it seems like your argument hinges on the idea that actually the loss of use is because there's virus present on the surfaces. Agreed. But if actually the reason that there was a loss of use is because you just can't go in the same enclosed space with another person and the threat is from the other person, it seems like that would undermine that argument. Well, that would also be a factual determination that should proceed to discovery in the sense of, one, the virus was present here, giving us the opportunity to prove that. But also in terms of were the patients, did this particular, did these entities shut down as a result of the presence, or did people just not show up because they were concerned about it? That's a factual determination that needs to be made after full discovery.  I understand that argument. You've reserved time for rebuttal, so we'll hear from you again. Let's turn to the appellee. Thank you. Ms. Dalla. Thank you, Your Honor. On behalf of defendant appellees. There are now eight appellate decisions interpreting New York law on whether property insurance policies like the ones plaintiffs had cover claims for lost business caused by the COVID-19 pandemic. The decisions all unanimously hold that loss of use of property is not direct physical loss as required under the plain language of the plaintiff's policies. In Consolidated Restaurants, a case for which we submitted a 28-J letter, the New York Appellate Division recently held that physical loss or damage means that the property must be changed, damaged, or affected in some tangible way, making it different from what it was before the claimed event occurred. Plaintiffs do not allege that their copy machines or their dental equipment are at all different now than they were before the pandemic. Plaintiffs also argue... Well, what about the point about smoke and mold? That once you remove it, everything's the same, and so the property's not different. Your Honor, in Kim Chi, this court held that without physical alteration or persistent contamination, it distinguished those mold cases from the mold, asbestos, the toxic gas... So what's the distinction? What's that? So what is the distinction? The distinction is that there isn't physical alteration or there isn't persistent contamination. COVID-19 on property doesn't need to be remediated. It dies off in a matter of seconds. As you know, it can be wiped down. It's fundamentally different, as you were noting earlier, Judge Matthews. That's interesting. So you think actually if the virus had a longer life on surfaces or needed to be remediated with a particularly stringent chemical or something, then it might be a covered loss? No. Those are two different... I would say that... I'm noting that it dies. It is not persistent. Unlike certain gases, which might need to be properly pulled out or ammonia, there might be an actual remediation that has to happen. But I will also note just on this line, in consolidated, the appellate division looked at those asbestos and toxic gas cases and noted that none of those are COVID-19 cases and none of those bind the appellate division. In consolidated, the appellate division then goes on to state that although some courts have sort of extended the definition of what physical loss might mean to include conditions that render property unusable, it was not necessarily doing that. And so we do not have new... Consolidated is the appellate division's interpretation of New York law and binds this court. What's your position? Would your client consider mold or smoke to be a direct physical loss? Your Honor, that is a state law question that varies state by state based on the circumstances... What's your understanding of the... I mean, would you honor a claim for mold? Like, we couldn't use our office because of mold, and so we had to remediate it. It depends on what the state law is in that situation, Your Honor. There are absolutely states... So you're saying you don't have a uniform intent as to what you think the phrase direct physical loss in your contract means? It would just depend on the state interpretation? Your Honor, all of these policies are crafted on a state by state basis. All of these policies are... There are changes to them based on the... Okay, well, fine. So then for a New York state, would you consider that a covered loss? I don't... I'm not sure I can state affirmatively what my client would hold in that situation. At the very least, we can say that it is meaningfully distinct from what we have here, where there's no remediation required. There is no... There's no physical change to the property in the same way that asbestos requires you to pull out walls. Those... Put up new drywall. There is no physical change to the property as a result of a contaminant. So it is true that the virus occlusion says direct physical loss or direct physical damage to covered property caused by a virus. So doesn't that mean that the insurer thinks there's such a thing as direct physical loss or direct physical damage that's caused by a virus? Absolutely. Virus can cause direct physical loss or damage. It doesn't mean it causes it in every situation. Give me an example. Sorry, what was that? Give me an example, please. Oh, sure. You know, we have... There are policyholders who insure farm animals, for example. If you own a farm, your livestock is part of your property. And in that situation, if we see a virus that... If it kills your cow, it's covered. It's covered, yeah. There's a... There's a site to that in the brief if the court is interested. Thank you. You can wrap up if you'd like. Sure. Just on the third point, which we didn't get to touch on. Plaintiffs, in the face of those decisions, the consolidated and Kim Chi, plaintiffs argue that the direct physical loss language should be considered ambiguous. Because some property insurance policies specifically include virus exclusions. Plaintiffs' policies don't, which they argue must mean that there's ambiguity in what direct physical loss means. But as Kim Chi and consolidated both held, the absence of an exclusion does not create coverage. And it doesn't really create ambiguity either. There are now over 70 appellate court decisions across the country that have determined that there's no ambiguity about what direct physical... Different things in contracts from the same insurer in the same state, right? Like we're saying, you're saying the unambiguous meaning is that it excludes the virus infection. But then when there's a contract that has the virus exclusion, direct physical loss means something different. At the very least, Your Honor, what consolidated and Kim Chi hold is that you cannot use the lack of an exclusion to try to read into meaning what the affirmative coverage provision provides. You cannot create coverage from an exclusion, or from the absence of an exclusion, and you can't create ambiguity based on the absence of an exclusion. You cannot look to the absence of an exclusion to implicate what the meaning of coverage is. If Your Honors have no other questions, I ask the court to affirm. Thank you. Thank you very much. We'll turn back to Mr. Berloff on rebuttal. Your Honor, there are two important points that I would like to address. I'll start with the last one, which is, according to the Second Circuit law, in fact, you can create ambiguity due to a lack of a form that is consistently used by an insurer. Wasn't it really the case that if the contract is ambiguous, we can look to other evidence? But if we think that it's unambiguous on its face, we wouldn't do that. Your Honor, no, I disagree. The actual statement, or the actual holdings in Quadrant Structured and International Multifoods is that industry custom and practice, as well as other similar contracts, are viewed in determining ambiguity in the first instance. That's the difference. We are not looking or asking the court to look at the virus limitation to determine substantively whether the virus is covered or not. That is a step that comes later. We are looking at the policy terms as they are written, just in terms of the actual terms to determine the definition of those terms. And the reason for that is because you can't hold it in one context as differently than in another. You can't have this insured with this same exact policy, have something, have a term mean something entirely different than the same insured just because one additional form is used. The meaning of that language has to be consistent throughout the various carrier, or through that carrier, throughout the various policyholders. Well, yes, so you're saying it has to be consistent through that carrier, but your argument does rely on the idea that it's inconsistent between carriers, even though it's the same phrase. That was our argument with respect to Kimchi that was ultimately rejected. I still think that that was the wrong holding, respectfully, but frankly— But even to prevail in this case, you would have to reach that conclusion. No, I— We're not going to overturn the prior cases where we said direct physical loss requires damage to the property or physical alteration of the property. Then you would have to lose this case. So you have to say that those contracts mean that in that context, but here, because this carrier has a virus exclusion, it means something different. The same phrase means something different. Your Honor, we would have to win that, but the basis that we think that we would be entitled to win on that argument is the fact that there is an express limitation in this direct policy because then, otherwise, the clients— But the limitation is not in your policy. The limitation is in other people's policies from the same carrier. Correct, but it is in the same carrier, which means that this particular policyholder would have that phrase applied differently than the same exact policy that just has an additional form. The other item, Your Honor, that I wanted to address is the reference to farm animals and the applicability of the virus limitation or the virus exclusion to them. It is very important, referring back to that virus limitation, this is not limited to property or farm animals or what have you. The virus limitation expressly applies to the standard property coverage form. It applies to real property. It applies to business personal property. So this is not a situation where we can say, oh, well, a virus can infect— You might have a standard form where some of the provisions are only relevant to certain types of property, right? I'm sorry, Your Honor? You might have a standard form where some provisions are only relevant to certain types of property. Your Honor, but the issue here is that this form— You can insure real property, too, right? That's correct. And you're insured against loss. That's correct. But real property doesn't often disappear. Correct. So, you know, you might lose something where it's stolen or it's destroyed or whatever, but that wouldn't happen to certain types of property. Like, there are provisions that are relevant to certain types of property and not relevant to other types of property. Agreed, Your Honor. But I guess my point is that this virus limitation can't be read to be superfluous. And my point here is that just because it can apply under certain circumstances to certain coverage forms, it expressly also applies to real property under the special coverage part as well as the standard property coverage part. So if this is read not to apply to real property, then ultimately the court would be reading that provision to be superfluous, which is an improper contractual interpretation. Thank you. Okay, thank you very much, Mr. Berloff. The case is submitted.